**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**(Rural Development f/k/a Farmers Home**<br>**Administration),**<br><br>  **Plaintiff,**<br><br>  v.<br><br>**GWENDOLYN WOODS a/k/a**<br>**GWENDOLYN M. WOODS, and**<br>**LPP MORTGAGE, LTD. f/k/a LOAN**<br>**PARTICIPANTS PARTNERS, LTD.,**<br><br>  **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 2014-0111**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Attorneys:**
Angela P. Tyson-Floyd, Esq.,
St. Croix, U.S.V.I.
  *For Plaintiff*

Richard H. Dollison, Esq.,
St. Thomas, U.S.V.I.
  *For Defendant LPP Mortgage, Ltd.*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment against Defendant Gwendolyn Woods and for Summary Judgment against Defendant LPP Mortgage, Ltd. f/k/a Loan Participants Partners, Ltd.," filed by Plaintiff United States of America (Rural Development f/k/a Farmers Home Administration) (the "United States") (Dkt. No. 32), and the "Motion for Default Judgment on Cross-Claim" filed by Defendant LPP Mortgage Ltd. ("LPP Mortgage") against Defendant Gwendolyn Woods (Dkt. No. 35). For the reasons discussed below,

the Court will grant the Motion for Default and Summary Judgment filed by the United States, and

will grant in part and deny in part the Motion for Default Judgment filed by LPP Mortgage.

## I.   BACKGROUND

On December 16, 2014, the United States filed a Complaint for debt and foreclosure against

Defendants Gwendolyn Woods a/k/a Gwendolyn M. Woods ("Woods") and LPP Mortgage, Ltd.

f/k/a Loan Participants Partners, Ltd. ("LPP Mortgage"). (Dkt. No. 1). The United States alleged

that, on September 12, 1980, Woods executed and delivered to the United States, acting through

Rural Development (also known as Rural Housing Service, an agency of the U.S. Department of

Agriculture), a Promissory Note (the "Note") in which she promised to pay the United States

$19,090.00, plus interest at the rate of 11.50% per annum, and to pay $188.00 in monthly

installments beginning on October 12, 1980. *Id.* ¶ 6. As security for payment on the Note, on

September 17, 1980, Woods executed and delivered to the United States a Mortgage encumbering

the following property ("the Property") described as:

> Plot No. 282 the Whim Estates, West End Quarter, St. Croix, U.S. Virgin Islands,
> consisting of 0.0840 US acre, more or less, as more fully shown on OLG Drawing
> No. 2663 dated December 22, 1968.

*Id.* ¶ 7. The Complaint alleged that, on September 12, 1980, Woods also entered into a Subsidy

Repayment Agreement with the United States, providing for the United States to recapture interest

credits granted to them upon foreclosure of the Mortgage. *Id.* ¶ 8.

In addition, the Complaint provided that, on August 12, 1988, Woods and the United States

entered into a Reamortization and/or Deferral Agreement ("First Reamortization Agreement")

which provided that a $210.00 payment would be due on September 12, 1988 and that installments

in that amount would be due and payable monthly, with the final installment due on September

12, 2013 if not paid sooner. *Id.* ¶ 9. On September 12, 1990, Woods and the United States entered

into another Reamortization Agreement ("Second Amortization Agreement"), which provided that

a $229.00 payment would be due on October 12, 1990 and that installments in that amount would be due and payable monthly, with the final payment due on September 12, 2013 if not paid sooner. *Id.* ¶ 10. Woods and the United States entered into a third Reamortization Agreement ("Third Reamortization Agreement") on October 12, 1993, which provided that a $290.00 payment would be due on October 12, 1993 and that installments in that amount would be due and payable monthly, with the final payment due on September 12, 2013 if not paid sooner. *Id.* ¶ 11.

The Complaint further alleged that Woods defaulted under the terms and conditions of the Note, Mortgage, and Reamortization Agreements by failing to pay the monthly installment due on August 12, 2009 and all subsequent installments. The United States declared the entire amount of the indebtedness immediately due and payable and demanded payment from Woods. As of the date of the Complaint, the default had not been cured. *Id.* ¶¶ 12-14.

The Complaint provided that the following sums were due under the Note as of October 1, 2014: $6,151.42 in principal and advances; $3,694.50 in interest from February 4, 2010 through October 1, 2014; and costs and fees for taxes and insurance of $25,243.46; for a total due of $35,089.39. That sum accrues interest at the rate of $5.3788 per diem until the date of Judgment, and at the legal rate of interest, pursuant to 28 U.S.C. § 1961, thereafter. *Id.* ¶ 15.

The Complaint alleged that LPP Mortgage may claim an interest in the Property by virtue of an assignment of notes and liens to LPP Mortgage from the U.S. Small Business Administration ("SBA") dated May 2, 2001, but that lien was inferior to the United States' Mortgage on the Property. *Id.* ¶ 16.

The United States sought judgment against Woods, *inter alia*, for all amounts due under the Note, foreclosure of the Mortgage, and a declaration of the priority of liens. *Id.* at pp. 6-7.

On January 21, 2015, Defendant LPP Mortgage filed an Answer to the Complaint which admitted that its lien on the Property was inferior to that of the United States. (Dkt. No. 4, ¶ 16).

3

The Answer also contained a Crossclaim against Woods which alleged that, on December 3, 1995, Woods executed and delivered a promissory note in favor of the SBA in the sum of $23,700.00, together with annual interest at the rate of 4.00%, payable in monthly installments of $116.00. *Id.* ¶ 5. Repayment of the indebtedness under that note was secured by a mortgage dated December 3, 1995, which covered the Property at issue. *Id.* ¶¶ 6-7. That note and mortgage were assigned to LPP Mortgage by an Assignment of Notes and Liens dated May 2, 2001; Woods failed to comply with the terms and conditions of those documents and defaulted under those instruments despite demand; and LPP Mortgage declared the entire unpaid principal sum with interest and late charges due. *Id.* ¶¶ 8-10. As of January 16, 2015, the sum of $31,499.94 was due and owing on those loan documents, with interest accruing at $1.84 per diem. *Id.* ¶ 10. LPP added that it filed a foreclosure action in Superior Court of the Virgin Islands against Woods in September 2009; Woods was served and failed to appear; although default was entered, judgment was never entered against her. *Id.* ¶¶ 12-16. In its Crossclaim, LPP Mortgage sought foreclosure of its "second priority lien" on the Property, as well as all sums due and owing under the loan documents, and a deficiency judgment. *Id.* at pp. 4-5.

On February 23, 2015, the United States filed a Motion for Service by Publication on Woods, which the Magistrate Judge of this Court denied without prejudice. (Dkt. Nos. 6, 8). LPP, however, successfully served Woods on February 11, 2015 with its Summons, Answer, and Crossclaim. (Dkt. No. 9). The Court subsequently granted the United States' Motion for Directed Service, which directed the U.S. Marshal Service to complete personal service on Woods. (Dkt. No. 16). Woods was served by the U.S. Marshal in New York on April 29, 2015 (Dkt. No. 18) and the Summons was returned executed on May 27, 2015. (Dkt. No. 22).

Meanwhile, on April 27, 2015, LPP Mortgage filed an Application for Entry of Default on its Crossclaim against Woods. (Dkt. No. 17). The Clerk of Court entered default against her on May 5, 2015. (Dkt. No. 19).

The United States filed an Application for Entry of Default against Woods on June 3, 2015 (Dkt. No. 23), and the Clerk of Court entered default against her on June 23, 2015. (Dkt. No. 24).

### A. The United States' Motion for Default and Summary Judgment

On November 20, 2015, the United States filed the instant Motion for Default Judgment against Woods, and for Summary Judgment against LPP Mortgage. (Dkt. No. 32). In its Memorandum in Support of its Motion, the United States contends that it is authorized to foreclose on the Property because: (1) Woods executed and delivered the Note, Mortgage, and three Reamortization Agreements to the United States, in which she promised to pay the debt owed, and pledged the Property as security for the debt; (2) Woods agreed that the United States would recoup any subsidies provided to her in the event of default; and (3) Woods defaulted under the terms and conditions of the Note and Mortgage, and failed to cure the default—all of which provide the authority for the United States to foreclose on the Property. (Dkt. No. 33 at 1, 2, 5). The United States also asserts that the requirements for a default judgment are satisfied because Woods received notice of the lawsuit but has not appeared or provided any response or defense to the foreclosure complaint; she is not an active duty member of any branch of the military; and she suffers from no legal incapacity that would prevent her from defending the action. *Id.* at 1, 5. In addition, the United States argued that the three factors for determining whether default judgment is appropriate, as set forth in *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), are met. *Id.* at 5.

The United States included a Declaration on the Certification of Government Records signed by Kimme R. Bryce, Area Director, United States Department of Agriculture, who had

personal knowledge of the documents executed by Woods, which were maintained as part of the United States' business records. (Dkt. No. 34-3). In her Declaration, Ms. Bryce noted the "unusual" circumstance that the Mortgage executed by Woods in 1980 did not contain a complete property description.[1] She added that "several documents contained in the file of Gwendolyn Woods consistently describe the Property in terms of the description that appears" in the Quitclaim Deed that conveyed the Property to Woods in 1979. *Id.*, citing Dkt. No. 34-4.[2] Ms. Bryce also signed a Certificate of Indebtedness, attached to her Declaration, certifying that Woods was indebted to the United States in the amount stated on the Payoff Information Sheet, which itemized how the interest and costs on the account were calculated. (Dkt. No. 34-5).

On the Payoff Information Sheet, Ms. Bryce asserted that, as of November 19, 2015, Woods was indebted to the United States in the principal amount of $6,151.43; plus accrued interest from February 4, 2010 to November 19, 2015 in the amount of $4,496.88; plus taxes, insurance, caretaker, and title search fees of $22,539.58; plus interest on those fees of $7,957.02; for a total indebtedness of $41,144.91. In addition, Ms. Bryce asserted that $1.9381 in per diem interest on the principal and $7.1015 in per diem interest on the fees accrues from November 20, 2015 until the date of Judgment. (Dkt. No. 34-5).

The United States also provided a Declaration of Angela Tyson-Floyd, Esq., counsel for the United States, who averred that Woods was personally served with the Summons and Complaint by the U.S. Marshal Service; Woods did not answer; the Clerk of Court entered default

---

[1] The description of the Property provided in the Mortgage is: "#282 Estate Whim, Frederiksted, St. Croix, V.I." (Dkt. No. 1-2).

[2] The Quitclaim Deed describes the Property as: "Plot No. 282, separated from Plot No. 102 of Estate Whim, West End Quarter, St. Croix, Virgin Islands, including one three bedroom unit, consisting of 0.0840 U.S. Acres, more or less, as more particularly shown on Public Works Drawing No. 2663 dated December 22, 1968." (Dkt. No. 34-4).

against her; and, to the best of her knowledge, Woods was not an infant or "incapacitated person." (Dkt. No. 34-1). Pursuant to the Servicemembers Civil Relief Act, Attorney Tyson-Floyd also averred that Woods is not on active duty status in the military service, as shown by a Status Report from the Department of Defense Manpower Data Center. *Id.*, Dkt. No. 34-2.

In addition, the United States argued in its Memorandum that it is entitled to summary judgment against Defendant LPP Mortgage. (Dkt. No. 33). The United States noted that Woods had executed a note and mortgage in favor of SBA, which was assigned to LPP Mortgage, covering the same Property that secured the debt to the United States. The United States further argued that it is undisputed that its Mortgage is superior to LPP Mortgage's mortgage because LPP's mortgage was executed and recorded after the United States' Mortgage; therefore, the United States' lien on the Property is a first priority lien, and LPP's lien is a second priority lien. *Id.* at 6.

Woods did not respond to the United States' Motion for Default Judgment. In its Motion for Default Judgment against Woods, LPP Mortgage stated that it did not contest the lien priority of the United States. (Dkt. No. 36).

### B. LPP Mortgage's Motion for Default Judgment

LPP Mortgage filed a separate Motion for Default Judgment on its Crossclaim against Woods on February 1, 2016. (Dkt. No. 35). In its Statement of Facts in Support of its Motion, LPP Mortgage asserts that, on December 3, 1995, Woods executed and delivered a promissory note in favor of the U.S. Small Business Administration ("SBA") in the amount of $23,700.00, together with interest at the rate of 4.00% per annum, payable in monthly installments of $116.00. (Dkt. No. 37, ¶ 5; Dkt. No. 37-1). Repayment of the note was secured by a mortgage dated the same day, covering the Property. (Dkt. No. 37-2). This note and mortgage were assigned to LPP Mortgage on May 2, 2001. *Id.* ¶¶ 6-8; Dkt. Nos. 37-1, 37-3. The Statement of Facts further provides that Woods failed to comply with the terms and conditions of the note and mortgage and is in default

7

under those instruments, despite demand, for failure to pay principal and interest, and LPP Mortgage elected to declare the unpaid principal plus accrued interest and late charges due. *Id.* ¶¶ 9, 10. As of January 5, 2016, LPP claims that the following amounts are due: $16,748.08 in unpaid principal; interest of $4,670.05; escrow/impound overdraft of $5,376.03; recoverable balance of $9,921.44; unpaid other fees of $735.00; and property inspection fees of $699.25; for a total amount due of $37,519.85. *Id.* ¶ 10. Interest accrues at $1.83 per day as of January 6, 2016. *Id.*

The Statement of Facts goes on to say that LPP may be required to pay real property taxes, insurance premiums or other charges with respect to the Property for which it is entitled to be reimbursed, as well as costs and fees including reasonable attorney's fees which become a lien on the Property until paid under the provisions of the loan documents. *Id.* ¶ 11. The Statement of Facts then provides a procedural history of this action: the United States filed a Complaint; LPP Mortgage filed its Answer and Crossclaim; Woods was served with the original Summons, Answer, and Crossclaim by process server on February 11, 2015 and she failed to appear or respond to the Crossclaim (Dkt. No. 17); the Clerk of Court entered default against Woods on the Crossclaim on May 5, 2015 (Dkt. No. 19); and LPP Mortgage served a request for mediation on Woods on November 3, 2015 (Dkt. No. 37-4) to which there has been no response. *Id.* ¶¶ 12-18.

One of the exhibits attached to the Statement of Facts is an Affidavit signed by Jeremy Cobb, Assistant Vice President, Default Operations and Client Relations, of MGC Mortgage, Inc., the authorized loan servicer for LPP Mortgage. (Dkt. No. 37-5). Mr. Cobb avers that he has reviewed and is personally familiar with LPP Mortgage's records concerning the loan made by SBA to Woods. *Id.* Mr. Cobb's affidavit attests to the truth of the statements made in LPP Mortgage's Statement of Facts. *Id.*

In its Memorandum of Law, LPP Mortgage states that it has satisfied the criteria to support judgment for debt and foreclosure against the Defendant. (Dkt. No. 36).

Finally, LPP Mortgage provided a Memorandum of Costs, Affidavit, and billing summary from its attorney, Richard H. Dollison, Esq., whose firm represented LPP Mortgage in this matter. In his Affidavit (Dkt. Nos. 36-1, 36-2), Attorney Dollison asserts that his billing rate was $250.00 per hour and the billing rate for his Litigation Paralegal, Irene Greaux, was $185.00 per hour. (Dkt. No. 36-2). The billing summary detailed the time spent preparing and prosecuting the action and costs incurred. Attorney Dollison seeks attorney's fees of $3,353.00 and costs of $219.38, and anticipates that additional fees of $3,750.00 will be incurred in post-judgment collection. *Id.*

On July 28, 2016, the Court issued an Order directing LPP Mortgage to file a supplement to its Motion for Default Judgment that would explain what costs constitute the requested $5,376.03 in "escrow/impound overdraft," the $9,291.44 in "recoverable balance," and the $735.00 in "unpaid other fees" that were set forth in the Cobb Affidavit. (Dkt. No. 38). In response, LPP Mortgage filed a supplemental affidavit from Mr. Cobb, along with supporting documents. (Dkt. No. 39). Mr. Cobb explains that "escrow/impound overdraft" constitutes real property hazard insurance charges for hazard policies purchased by LPP Mortgage to insure the Property since 2010. (Dkt. No. 39-1, ¶ 4; Dkt. No. 39-2). He states that "recoverable balance" consists of "attorney's fees and court costs incurred with LPP's previous law firm and on the foreclosure pending in the Superior Court, as well as the fees and costs itemized in the Memorandum of Costs" submitted by Attorney Dollison. (Dkt. No. 39-1, ¶ 5). He adds that the recoverable balance should be reduced by the $3,572.38 sought in the Memorandum of Costs as a duplication. *Id.* ¶ 6; Dkt. No. 39-3. Finally, Mr. Cobb asserts that $735.00 in "unpaid other fees" consists of "other attorneys' fees accounted for by a different loan servicer. A breakdown of the 'unpaid other fees' is not available." *Id.* ¶ 7. In addition, Mr. Cobb provided an itemization of the property inspection fees. (Dkt. No. 39-4).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.  Default Judgment

In a motion for default judgment, "'the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer*, 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951).  In the context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp.*, 574 F. App'x at 231 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemembers] Civil Relief Act.

*Flagstar Bank, FSB v. Rivers*, 2014 WL 1101858, at *3 (D.V.I. Mar. 18, 2014) (quoting *Bank of Nova Scotia v. Abdallah*, 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio*, 2009 WL 1507406, at *1 (D.V.I. May 28, 2009). Additionally, the Court must assess three factors when determining whether default

judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

## B. Summary Judgment

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, on the uncontroverted facts, it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Bonkowski v. Oberg Indus.*, 787 F.3d 190, 195 n.1 (3d Cir. 2015). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Mahoney v. McDonnell*, 2015 U.S. App. LEXIS 10662, at *10 (3d Cir. June 24, 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or . . . vague statements." *Patterson v. Glory Foods, Inc.*, 555 F. App'x 207, 211 (3d Cir. 2014) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (internal quotation marks omitted; alteration in original)); *see also* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248. When a genuine issue of material fact exists, summary judgment is inappropriate. *See Fontroy v. Beard*, 559 F.3d 173, 182 (3d Cir. 2009) (citations omitted).

"'Generally, debt actions are well suited for summary judgment. Because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment.'" *LPP Mortgage, Ltd. v. Ferris*, 2014 WL 2459802, at *4 (D.V.I. June 2, 2014) (quoting *Pemberton Sales & Serv., Inc. v. Banco Popular de Puerto Rico*, 877 F. Supp. 961, 971 (D.V.I. 1994)). To succeed on a debt and foreclosure action, the plaintiff

must show: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Id.* at *5 (D.V.I. June 2, 2014) (citing *Thompson v. Fla. Wood Treaters, Inc.*, 2009 WL 4730794, at *3 (D.V.I. Dec. 6, 2009)).

## III.   ANALYSIS

### A. The United States' Default Judgment Against Woods

The United States has satisfied all of the requirements necessary to obtain a default judgment against Woods. In the Declaration of Counsel, Attorney Angela Tyson-Floyd stated, and the record shows, that Woods has been validly served with all pleadings but has not appeared. (Dkt. Nos. 18, 22, 34-1). The United States has properly shown that default was entered against Woods by the Clerk of Court. (Dkt. No. 24). Attorney Tyson-Floyd averred in her Declaration that, "[t]o the best of [her] knowledge, information and belief, Woods is not an infant or incapacitated person." (Dkt. No. 21-1).[3] The Court finds this sworn statement is sufficient to satisfy the default judgment requirements that the United States show that Woods is not an incompetent person nor an infant. *See FirstBank Puerto Rico v. Jaymo Properties, LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (holding that counsel's "information and belief" are sufficient grounds upon which to find that a non-appearing defendant is not a minor or incompetent person for the purposes of obtaining a default judgment). Further, the United States has shown with specificity how it calculated the amount of monies due by providing the Declaration of Kimme Bryce, a Certificate of Indebtedness, and a Payoff Information Sheet. (Dkt. Nos. 34-3, 34-5). In addition, the United

---

[3] Pursuant to Rule 55(b)(1), a party seeking default judgment must show that the defendant who has defaulted "is neither a minor nor an incompetent person." The Court draws the United States' attention to the fact that "incompetent" and "incapacitated" are not synonymous. The United States is put on notice to correct this error in future submissions.

States has provided a copy of a Military Status Report from the Department of Defense Manpower Data Center showing that Woods is not on active duty status with the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 34-2).

Finally, the United States has argued, and the Court has considered, the *Chamberlain* factors and finds that the prejudice to the United States resulting from Woods' breach of her contractual obligations, together with the apparent absence of a litigable defense, weigh in favor of the Court granting default judgment. *See* Dkt. No. 33 at 5. In addition, Woods' culpable conduct is evidenced by her refusal to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

Consequently, default judgment against Defendant Woods is appropriate.[4]

## B. The United States' Summary Judgment against LPP Mortgage

The record shows that Woods executed a note in favor of the SBA on December 3, 1995 and a mortgage on the same day securing repayment of the indebtedness of that note, and the SBA mortgage covers the Property owned by Woods. (Dkt. Nos. 37-1, 37-2, 37-3). LPP Mortgage has acknowledged in its Answer to the United States' Complaint that its lien on the Property was "subordinate" and a "second priority lien" to that of the United States. (Dkt. No. 4, ¶ 16, pp. 2, 5).

---

[4] As noted earlier, the Mortgage contains an incomplete description of the 282 Estate Whim Property at issue. However, the Quitclaim Deed provides a complete description of the Property. (Dkt. No. 34-4). Further, as noted earlier, Ms. Bryce stated, based on her personal knowledge, that several documents contained in the file of Gwendolyn Woods consistently describe the Property in terms of the description that appears in the Quitclaim Deed. (Dkt. No. 34-3).

It also stated in its Motion for Default Judgment on its Crossclaim that it did not contest the lien priority of the United States. (Dkt. No. 36).

Since LPP Mortgage was named as a Defendant in this lawsuit because it had a lien on the same Property as the United States, and LPP acknowledges that its lien is inferior to that of the United States, there is no dispute of material fact that the United States' lien has priority over LPP Mortgage's lien. Accordingly, the Court finds that the United States has a first priority lien on the Property, and LPP Mortgage has a second priority lien, and the Court will grant the United States' Motion for Summary Judgment as to LPP Mortgage.

### C. LPP Mortgage's Default Judgment against Woods on its Crossclaim

With regard to the requirements necessary to obtain a default judgment on its Crossclaim against Woods, LPP Mortgage has shown that Woods was properly served with the Summons, Answer, and Crossclaim (Dkt. No. 17-1); Woods has not appeared; and default was entered against her by the Clerk of Court (Dkt. No. 19). In an Affidavit filed in support of LPP Mortgage's application for entry of default, Attorney Dollison averred that, based upon his "information and belief, Defendant Gwendolyn Woods a/k/a Gwendolyn M. Woods is not an infant or incompetent," (Dkt. No. 17-3), which suffices to satisfy the default judgment requirements that LPP Mortgage show that Woods is not an incompetent person nor an infant. *See Jaymo Properties, LLC*, 379 F. App'x at 170. In addition, Attorney Dollison provided a copy of the Status Report from the Department of Defense Manpower Data Center showing that Woods is not an active member of the military service as defined in the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 17-2). Although LPP Mortgage did not address this point, the Court has considered the *Chamberlain* factors and finds that the prejudice to LPP Mortgage resulting from Woods' breach of her contractual obligations, and the apparent absence of a litigable defense weigh in favor of the Court granting default judgment. Furthermore, Woods' default is a result of their

14

culpable conduct as evidenced by their failure to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

While LPP Mortgage has shown with specificity how it calculated the amounts due on its Crossclaim, the Court finds that some of LPP Mortgage's calculations are incorrect or are disallowed, and will therefore grant in part and deny in part LPP Mortgage's Motion for Default Judgment.

As indicated above, LPP Mortgage claims in its Statements of Facts that, as of January 5, 2016, the following amounts are due on its Crossclaim as a result of Woods' default: $16,748.08 in unpaid principal; interest of $4,670.05; escrow/impound overdraft of $5,376.03; recoverable balance of $9,921.44; unpaid other fees of $735.00; and property inspection fees of $699.25, for a total amount due of $37,519.85. (Dkt. No. 37, ¶ 10). By Order entered on July 28, 2016, the Court sought clarification of the escrow/impound overdraft fees, recoverable balance fees, and unpaid other fees (Dkt. No. 38), which LPP Mortgage addressed in a second Affidavit from Mr. Cobb. (Dkt. No. 39-1). He specified that the escrow/impound overdraft costs covered hazard insurance—costs which the Court will allow. However, he indicated that the recoverable balance of $9,921.44 consisted of "attorney's fees and court costs incurred with LPP's previous law firm and on the foreclosure pending in the Superior Court, as well as the fees and costs itemized in the Memorandum of Costs submitted with LPP's motion." (Dkt. No. 39-1, ¶ 5). Mr. Cobb added that, of the $9,921.44 requested, $3,572.38 represented the attorney's fees and costs separately sought in Attorney Dollison's Memorandum of Costs, and was therefore duplicative. *Id.* ¶ 6.

LPP Mortgage has submitted no authority for this Court to reimburse attorney's fees and costs which are not only incurred in an entirely separate action from the instant action, but which are not specified in any billing summary from that attorney. Further, since the recoverable balance included the $3,572.38 in attorney's fees and costs sought separately by Attorney Dollison (addressed below), the Court will disallow this portion of the amount sought as duplicative. Thus, the Court will disallow the entire amount sought as "recoverable balance." In addition, the Court will not allow the $735.00 sought in "unpaid other fees" sought by LPP Mortgage, consisting of unspecified "other attorneys' fees accounted for by a different loan servicer," where a breakdown of those fees "is not available." (Dkt. No. 39-1, ¶ 7).

In sum, the Court will allow $16,748.08 in unpaid principal, interest of $4,670.05, $5,376.03 in escrow/impound overdraft, and property inspection fees of $699.25, and disallow the entirety of the $9,921.44 in recoverable balance and $735.00 in "unpaid other fees" sought by LPP Mortgage.

### D. LPP's Request for Attorney's Fees

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b). Under both the terms of LPP Mortgage's note and mortgage, LPP Mortgage may recover "reasonable" attorney's fees. (Dkt. No. 37-1 at 2; Dkt. No. 37-2, ¶ 4). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v.*

16

*Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

First, with regard to the hourly rate, Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). LPP Mortgage's Attorney, Richard H. Dollison, the principal in the Law Offices of Richard H. Dollison, P.C., indicated that his established billing rate was $250.00 per hour. (Dkt. No. 36-2). The billing records, spanning from December 4, 2013 through November 23, 2015, show that Attorney Dollison billed $250.00 per hour. Based on the case law, the Court concludes that the $250.00 per hour rate charged by Attorney Dollison falls within the scope of rates for such services for comparable attorneys, and is reasonable.

LPP Mortgage also seeks reimbursement for work performed by paralegal Irene Greaux, who billed at the rate of $185.00 per hour. (Dkt. No. 36-2). However, the Memorandum of Costs, which contains initials of the person performing work on a particular task in this case, does not contain the initials "IG." There are entries for "IQ" showing that person performed basic

17

administrative tasks, billed at a rate of $150.00 per hour for 3.9 hours, totaling $585.00. (Dkt. No. 36-2).

In its Memorandum, LPP Mortgage cites a number of District Court cases that have allowed paralegal fees, as well as some that have denied them. (Dkt. No. 36-1). LPP Mortgage also cites 5 V.I.C. § 531(a) which provides that foreclosures are equitable proceedings, and argues that the Court should include paralegal fees in an award of attorney's fees to encourage the use of paralegals as a cost savings. *Id.*

The Court recognizes that work performed by paralegals that could otherwise have been performed by a licensed attorney at a higher rate is more cost effective and efficient. In addition, although the Court also recognizes that it has, in the past, awarded attorney's fees for paralegal services, this is an issue of local law and this Court is required to follow local law when assessing whether attorney's fees are reasonable. In this regard, the local courts have not interpreted 5 V.I.C. § 541(b) as allowing an award of fees for the work of paralegals. *See, e.g., Mahabir v. Heirs of George*, 2014 WL 1392954, at *1 (V.I. Super. Ct. Apr. 4, 2014) ("Defendant has provided no argument or case law demonstrating that 5 V.I.C. § 541(b) stands for the proposition that a prevailing party may obtain law clerk or paralegal fees as part of its award of attorney's fees. Other courts in the Virgin Islands have denied similar fees on this basis."); *Chapa v. Sepe*, 2013 WL 8609242, at *1 (V.I. Super. June 3, 2013) (same); *cf. Morcher v. Nash*, 32 F. Supp. 2d 239, 241 n.1 (D.V.I. 1998) (paralegal fees denied "because no authority [was] advanced for their inclusion").

In addition, the billing summary contains an entry for "DG" who spent 0.3 hours at $135.00 per hour, for a charge of $40.50, and an entry for "MLR" who spent 1.9 hours at $225.00 per hour, for a charge of $427.50, for work on this case. Since these individuals are not identified in Attorney Dollison's Memorandum of Costs, these charges will also be disallowed.

Based on the foregoing, the request for attorney's fees will be reduced by $1,053.00, representing the charges billed to IQ, DG, and MLR.

With regard to the reasonableness of the time expended, LPP Mortgage seeks compensation for 10.25 hours of work billed in this matter (excluding paralegal time and time attributed to unidentified individuals). However, 5.6 hours of this time concerns work in September and October 2014 on pleadings on a motion for default judgment that took place two months before the United States filed this action in December 2014, and three months before LPP Mortgage filed its Answer and Crossclaim in January 2015. The Court will therefore not allow these attorney's fees, as they apparently were incurred for work in another matter—possibly the Superior Court action—and there is no explanation as to why the attorney's fees in this case should encompass those fees as well. The Court will therefore allow attorney's fees in the amount of $900.00, representing 3.6 hours of work by Attorney Dollison spanning January 7, 2015 through November 23, 2015 in this case. The Court concludes that this amount of time is reasonably billed on a crossclaim in this run-of-the-mill default judgment debt and foreclosure case.

LPP Mortgage also seeks reimbursement of $16.98 for postage and copying expenses, and $175.00 representing a broker's price opinion. (Dkt. No. 36-2).

The mortgage at issue provides that LPP Mortgage may collect "the expenses incurred" in pursuing foreclosure remedies. (Dkt. No. 37-2 at 4). The Court will look to Virgin Islands law for guidance in determining appropriate costs and expenses.

Title 5, Section 541(a) defines what costs are "allowed in a civil action."[5] "Expenses" are not defined by statute, nor are they defined in LPP Mortgage's mortgage or other loan documents.[6]

In order for costs to be reimbursed, they must be reasonable. *See Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014) (opining that prevailing party in civil action may "recover reasonable costs and attorney's fees" under statute). Similarly, in order for expenses (under the contract) to be reimbursed, they must also be reasonable. *See Rainey v. Hermon,* 2011 WL 4738534, at *6 (V.I. Oct. 6, 2011) (enforcing the terms of a contract, even for legal fees and administrative expenses, "unless the fee is unreasonable."); Rule 211.1.5 of the Virgin Islands Rules of Professional Conduct, adopted by the Supreme Court of the Virgin Islands, effective February 1, 2011 (providing that fees and expenses awarded in the Virgin Islands must be "reasonable").

The Court finds that the $175.00 expense related to a broker's opinion is reasonable and will be allowed. On the other hand, it is well-established that "overhead costs," such as copying costs and postage, are not compensable under § 541. *Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014). The Court therefore finds that LPP Mortgage is not entitled to the $16.98 in postage and copying fees that it seeks, and will disallow those expenses.

---

[5] The costs allowed under Virgin Islands law are: "(1) Fees of officers, witnesses, and jurors; (2) Necessary expenses of taking depositions which were reasonably necessary in the action; (3) Expenses of publication of the summons or notices, and the postage when they are served by mail; (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure; (5) Necessary expenses of copying any public record, book, or document used as evidence on the trial; and (6) Attorney's fees as provided in subsection (b) of this section." 5 V.I.C. § 541(a).

[6] The Supreme Court of the Virgin Islands has opined that costs and expenses do not cover the same outlays of funds in a case. *Terrell v. Coral World,* 55 V.I. 580, 591 n.14, 2011 WL 3492575 (V.I. July 20, 2011).

In sum, the Court will allow $900.00 in attorney's fees and $175.00 in costs, for a total of $1,075.00, through November 23, 2015.

## IV.   CONCLUSION

For the reasons discussed above, the Court will grant the United States' Motion for Default Judgment against Defendant Gwendolyn Woods a/k/a Gwendolyn M. Woods, and the United States' Motion for Summary Judgment against Defendant LPP Mortgage, Ltd. f/k/a Loan Participants Partners, Ltd. (Dkt. No. 32). The Court will grant in part and deny in part Defendant LPP Mortgage's Motion for Default Judgment on its Crossclaim against Defendant Woods. (Dkt. No. 35).

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: October 31, 2016 

_____/s/_____
WILMA A. LEWIS
Chief Judge

21